UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA HAHTO-AUNE,

          Plaintiff,

   v.

NANCY A BERRYHILL, Acting
Commissioner of Social Security,

          Defendant.

CASE NO. 2:17-CV-01226-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff Lisa Hahto-Aune filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred at Step Two and in his treatment of the medical opinion evidence. Had the ALJ properly considered all of Plaintiff's severe impairments at Step Two and the medical opinion evidence, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's

error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

FACTUAL AND PROCEDURAL HISTORY

On April 9, 2014, Plaintiff filed an application for DIB, alleging disability as of October 10, 2013. *See* Dkt. 8, Administrative Record ("AR") 31. The application was denied upon initial administrative review and on reconsideration. *See* AR 31. ALJ Wayne N. Araki held a hearing on January 12, 2016. AR 57-97. In a decision dated March 2, 2016, the ALJ determined Plaintiff to be not disabled. AR 31-41. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-3; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred: (1) by failing to find Plaintiff's degenerative disc disease as a severe impairment at Step Two; (2) in his treatment of the medical opinion evidence; and (3) by not giving clear and convincing reasons for discounting Plaintiff's subjective symptom testimony, and not giving germane reasons to reject lay witness testimony. Dkt. 12, pp. 2, 7-20.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**I.** **Whether the ALJ properly considered all of Plaintiff's severe impairments at Step Two.**

Plaintiff argues the ALJ erred by failing to find Plaintiff's degenerative disc disease a severe impairment at Step Two of the sequential evaluation process. Dkt. 12, pp. 7-8; Dkt. 14, pp. 1-5.

Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R. § 140.1521(b)). An impairment or combination of impairments "can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling "SSR" 85-28)).

At Step Two, the ALJ found Plaintiff's only severe impairment was "affective disorder/bipolar disorder." AR 33. The ALJ further stated "[t]he objective medical records do not demonstrate a severe physical impairment" and Plaintiff's "record includes reports of other physical symptoms and conditions that were no more than transient or did not cause significant

1    limitations." AR 33-34. Thus, the ALJ did not find that Plaintiff had any severe physical

2    impairments at Step Two.[1] *See* AR 33-34.

3              On July 14, 2008, Dr. F. Christian Killien, M.D., an acceptable medical source, reviewed

4    magnetic resonance imaging ("MRI") of Plaintiff's cervical spine and diagnosed her with

5    degenerative disc disease "at four levels with principally left sided foraminal narrowing." AR

6    541. Dr. Killien noted that the MRI of Plaintiff's cervical spine showed "moderate foraminal

7    narrowing bilaterally" at the C3-4 level. AR 541. Likewise, the C4-5 level showed "moderate

8    foraminal narrowing bilaterally," and the C5-6 level was "open on the right but moderately

9    narrowed on the left." AR 541. In addition, the C6-7 level was "reasonably open on the right and

10   moderately to severely narrowed on the left." AR 541.

11             The record contains evidence showing Plaintiff's degenerative disc disease causes

12   functional limitations, as well. On the MRI report, Dr. Killien noted Plaintiff suffered from neck

13   pain "with radiation into both arms" and "tingling/numbness of fingertips related to neck pain."[2]

14   AR 541. Treatment notes from Renee Joergens, P.T., on January 7, 2016 stated objective testing

15   revealed Plaintiff's cervical spine had moderate loss of flexion. AR 574-75. Several other

16   treatment notes from 2013 through 2016 further document Plaintiff's neck and back pain and

17   subsequent functional limitations. *See, e.g.*, AR 322 ("neck and back pain"), 406-10 (cervical

18   spine contained "subluxations with spasm, hypomobility and end point tenderness"), 411

19

20             [1] The ALJ also gave "little weight" to a functional capacity evaluation completed by Dr. Leo Studzinski,
     D.C., Plaintiff's treating chiropractor, at Step Two. AR 34. The Court considers the ALJ's treatment of Dr.
21   Studzinski's medical opinion with the rest of the medical opinion evidence in Section II of this Order.

22             [2] Defendant argues the MRI report "is immaterial" to Plaintiff's disability claim because it predates
     Plaintiff's alleged disability onset date. Dkt. 13, p. 4. However, this MRI report is relevant because it shows
     Plaintiff was diagnosed with a physical impairment and suffered functional limitations as a result. *See Tommasetti
23   v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[t]he ALJ must consider all medical opinion evidence"); *Flores v.
     Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (citation and internal quotation marks omitted) (the ALJ cannot
24   reject "significant probative evidence without explanation").

("restrictions demonstrated in the cervical and/or lumbar spine," as well as "[l]ingering left sided lower back pain"), 522 (medical care given for "[b]ack pain and muscle spasms"). Since Plaintiff's neck pain, back pain, and functional limitations are documented throughout medical treatment notes spanning several years, the ALJ's assertion that Plaintiff's physical conditions were "transient" is not supported by substantial evidence.

In addition, Plaintiff's hearing testimony further demonstrates the functional limitations caused by her degenerative disc disease.[3] For instance, Plaintiff reported she struggled with dropping things when she was working due to finger numbness and "stabbing" feelings in her fingers. AR 82-83; *see also* AR 541 (Dr. Killien noting Plaintiff's degenerative disc disease causes finger numbness). Plaintiff moreover reported she has trouble bending and struggles to "lean over without losing balance and falling." AR 83.

In sum, an acceptable medical source diagnosed Plaintiff with degenerative disc disease, and the record establishes these impairments significantly limit Plaintiff's ability to conduct basic work activities. Thus, the Court finds Plaintiff's degenerative disc disease is a severe impairment. The ALJ therefore erred by failing to find this impairment severe. *See Flores*, 49 F.3d at 570-71 (an ALJ "may not reject significant probative evidence without explanation").

While the ALJ erred by failing to discuss Plaintiff's severe impairment of degenerative disc disease at Step Two, the Court must determine whether this error was harmless. Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The

---

[3] The Court considers the ALJ's treatment of Plaintiff's subjective symptom testimony in Section III of this Order.

determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)). If the ALJ accounts for all of Plaintiff's limitations in assessing the RFC, the Step Two error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

In this case, the ALJ failed to consider Plaintiff's degenerative disc disease as a severe impairment at Step Two. *See* AR 33-34. The ALJ also failed to include any physical limitations in Plaintiff's RFC. *See* AR 35. Had the ALJ properly considered Plaintiff's degenerative disc disease at Step Two, the RFC and hypothetical questions posed to the vocational expert may have contained physical limitations, such as limitations related to Plaintiff's finger numbness, cervical spine restrictions, and inability to bend. As such, the ALJ's failure to properly consider Plaintiff's degenerative disc disease at Step Two and throughout the remaining sequential evaluation process impacts the ultimate disability decision and was not harmless.

## II. Whether the ALJ properly considered the medical opinion evidence.

Plaintiff next argues the ALJ erred in his treatment of the medical opinion evidence. Dkt. 12, pp. 8-10, 12-14. In particular, Plaintiff maintains the ALJ erred (1) by failing to discuss evidence from Plaintiff's treating physicians at Group Health, and (2) in his treatment of examining physician Dr. Kathleen Andersen, M.D. *Id.*

### A. Treating Physicians at Group Health

First, Plaintiff maintains the ALJ erred by failing to discuss evidence from her treating physicians at Group Health. *Id.* at 8-10.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In this case, Plaintiff received treatment from physicians at Group Health. *See, e.g.*, AR 321-355, 540-43, 566-82 (Group Health treatment notes). Yet the ALJ discussed only a portion of these treatment notes in his assessment of the medical opinion evidence. *See* AR 34-39. Furthermore, the Court has determined the ALJ erred at Step Two by failing to find Plaintiff's degenerative disc disease a severe impairment. *See* Section I, *supra*. Because the ALJ's reconsideration of Step Two may impact his assessment of these treatment notes, the ALJ must consider this medical opinion evidence on remand.

The ALJ did discuss medical opinion evidence from Dr. Leo Studzinski, D.C., Plaintiff's treating chiropractor. *See* AR 34; *see also* AR 398-434 (Dr. Studzinski's treatment notes). Dr. Studzinski completed a Physical Medical Source Statement regarding Plaintiff's functional limitations. *See* AR 559-62. In this report, Dr. Studzinski wrote "I don't know" in response to whether Plaintiff's impairments lasted or could be expected to last at least twelve months. AR 559. Regarding Dr. Studzinski's opinion, the ALJ wrote:

1    I give little weight to the October 2015 functional capacity evaluation completed
     by Dr. Studzinki. In this form he suggests rather severe limitations, but indicates
2    these limitations applied as of October 2015 at the earliest, and indicated that he
     did not know whether they would last for at least twelve months. Thus, Dr.
3    Studzinki's opinion and limitations do not meet the durational requirements.

4    AR 34 (internal citation omitted).

5         The ALJ's sole reason for discounting Dr. Studzinski's Medical Source Statement was

6    because Dr. Studzinski did not know whether Plaintiff's impairments would last for at least

7    twelve months. This is a proper reason for discounting Dr. Studzinski's Medical Source

8    Statement. *See* 42 U.S.C. § 423(d)(1)(A) (in the Social Security context, a "disability" is

9    generally an impairment "which has lasted or can be expected to last for a continuous period of

10   not less than 12 months"); *see also Barnhart v. Walton*, 535 U.S. 212, 217-222 (2002)

11   (upholding Defendant's regulatory interpretation of the Social Security Act's "disability"

12   definition, which requires an "impairment" and inability to engage in substantial gainful activity

13   for "not less than 12 months"); *Woeppel v. Colvin*, 2014 WL 868808, at *9 (W.D. Wash. Mar. 5,

14   2014) (finding an ALJ properly discounted a physician's opinion because the physician "did not

15   identify any impairment that [was] . . . expected to last for at least 12 months").

16        However, the Court has determined the ALJ must reconsider the medical opinion

17   evidence on remand in light of the Step Two error. Therefore, the ALJ shall reconsider Dr.

18   Studzinski's opinion on remand, as well.[4]

19        B.   Examining Physician Dr. Kathleen Andersen

20        Second, Plaintiff asserts the ALJ erred in the weight he gave to examining physician, Dr.

21   Andersen. Dkt. 12, pp. 12-14.

22   _____

23        [4] The parties dispute whether Plaintiff properly raised the ALJ's treatment of Dr. Studzinski's opinion on
     appeal to this Court. *See* Dkt. 13, p. 5 n.2; Dkt. 14, pp. 3-4. Regardless, the ALJ must reconsider Dr. Studzinski's
24   opinion with the rest of the medical opinion evidence due to the Step Two error.

Dr. Andersen conducted a psychiatric evaluation of Plaintiff on September 28, 2015. AR 475-80. In her Psychiatric Report, Dr. Andersen noted she was unable to carry out her full interview due to Plaintiff's "mental state" at the time. AR 475. Hence, Dr. Andersen based her report on her "brief interaction" with Plaintiff, as well as her review of Plaintiff's medical records. *See* AR 475-80. Dr. Andersen opined she "could not picture [Plaintiff] being able to maintain employment." AR 480.

The ALJ gave "little weight" to Dr. Andersen's opinion, reasoning:

> (1) Dr. Andersen's opinion is based on their brief encounter, which represented a snapshot of the claimant's functioning in an environment she obviously did not want to be in. During the appointment, the claimant indicated she did not want to be there. (2) Less than two weeks after this appointment the claimant was hospitalized for suicidal ideation and reported she was not taking any medications. As indicated above, the claimant said she had not been taking any medications for over a year.

AR 39 (internal citations omitted, numbering added).

First, the ALJ gave little weight to Dr. Andersen's opinion because it was based on a "brief encounter . . . in an environment [Plaintiff] obviously did not want to be in." AR 39. An examining physician, by definition, does not have a treating relationship with a claimant and usually only examines the claimant one time. *See* 20 C.F.R. § 404.1527. As such, discrediting an examining physician's opinion because she "only saw the claimant one time would effectively discredit most, if not all examining doctor opinions." *Yeakey v. Colvin*, 2014 WL 3767410, at *6 (W.D. Wash. July 31, 2014). Notably, Dr. Andersen conditioned her opinion on the fact that it was based on a "brief encounter." *See* AR 480. Furthermore, in addition to meeting with Plaintiff, Dr. Andersen reviewed several of Plaintiff's medical records. *See* AR 475-80. Hence, under these circumstances, this was not a specific, legitimate reason, supported by substantial evidence, to discount Dr. Andersen's opinion.

Second, the ALJ gave Dr. Andersen's opinion little weight because Plaintiff was not on medication at the time of the examination. AR 39. Impairments that can be controlled with medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted). Nonetheless, Dr. Andersen's report indicates she knew Plaintiff may not have been on medication. Specifically, Dr. Andersen asked during the examination whether Plaintiff was on medications and did not receive an answer. *See* AR 479. Moreover, Dr. Andersen's report detailed several instances of Plaintiff going on and off of her medications. *See* AR 475-78. Because Dr. Andersen was on notice that Plaintiff was not medication compliant, this was not a specific, legitimate reason to discount her opinion.

For the above stated reasons, the Court concludes the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to give Dr. Andersen's opinion little weight. The ALJ therefore erred. Because Dr. Andersen opined Plaintiff could not maintain employment, the ultimate disability determination may have changed. For example, if the ALJ gave this opinion great weight, he may have found Plaintiff disabled. Accordingly, the ALJ's error is not harmless, and the ALJ must reconsider Dr. Andersen's opinion on remand. *See Molina*, 674 F.3d at 1115. However, given that Dr. Andersen was unable to conduct her full examination, the ALJ may consider on remand whether an additional psychiatric examination is appropriate.

### III. Whether the ALJ properly discounted Plaintiff's subjective symptom testimony and the lay witness testimony.

Plaintiff further alleges the ALJ provided legally insufficient reasons to discount Plaintiff's testimony and the lay witness testimony. Dkt. 12, pp. 14-18. The Court concluded the ALJ committed harmful error at Step Two and in his assessment of the medical opinion evidence. *See* Sections I & II, *supra*. Because the ALJ's reconsideration of Step Two and the

medical opinion evidence may impact his assessment of Plaintiff's subjective symptom testimony and the lay witness testimony, the ALJ must reconsider this evidence on remand.

The Court also notes, on March 28, 2016, the Social Security Administration changed the way it analyzes a claimant's credibility. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2016 WL 1237954 (Mar. 24, 2016). The term "credibility" will no longer be used. SSR 16-3p, 2016 WL 1119029 at *1. Further, symptom evaluation is not an examination of a claimant's character. *See id*. at *10 ("adjudicators will not assess an individual's overall character or truthfulness"). The ALJ's decision here – dated March 2, 2016 – was issued before SSR 16-3p became effective. Thus, the ALJ did not err by failing to apply SSR 16-3p. But on remand, the ALJ is directed to apply SSR 16-3p when evaluating Plaintiff's subjective symptom testimony.

## IV. Whether the case should be remanded for an award of benefits.

Lastly, Plaintiff requests the Court remand her claim for an award of benefits. Dkt. 12, pp. 18-20; Dkt. 14, p. 9.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

The Court has determined, on remand, the ALJ must re-evaluate this entire matter properly considering all of Plaintiff's severe impairments at Step Two and the medical opinion evidence. Therefore, remand for further administrative proceedings is appropriate.

<u>CONCLUSION</u>

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 24th day of January, 2018.

David W. Christel
United States Magistrate Judge